# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL NO. 5:10CV200-RLV-DSC

| | |
|---|---|
| JUNE H. HULL,          ) | |
|      Plaintiff,    ) | |
|      vs.            ) | **MEMORANDUM AND RECOMMENDATION** |
|                ) | |
| MICHAEL J. ASTRUE,  ) | |
| Commissioner of Social    ) | |
| Security Administration,   ) | |
|      Defendant.   ) | |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #5) and "Memorandum in Support ..." (document #6), both filed May 9, 2011; and Defendant's "Motion for Summary Judgment" (document #7) and "Memorandum in Support ... (document #8), both filed July 11, 2011. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be <u>denied</u>; that Defendant's Motion for Summary Judgment be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I. PROCEDURAL HISTORY

On September 12, 2003, Plaintiff filed an application for a period of disability and Social Security benefits alleging she was unable to work as of January 8, 2001. Plaintiff's application was denied initially and on reconsideration, and a hearing was held on October 25, 2007 (Tr. 282-335). On January 29, 2008, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff

was not disabled (Tr. 12-25). The Appeals Council denied Plaintiff's request for review on June 13, 2008 (Tr. 4-7), and Plaintiff filed suit in the United States District Court for the Western District of North Carolina, seeking review of the Commissioner's final decision.

Pursuant to the Commissioner's consented to motion for remand under 42 U.S.C. § 405(g), the Court issued an order on November 4, 2008, remanding the case for further administrative proceedings (Tr. 371-376). On January 15, 2009, the Appeals Council remanded the case to the ALJ for further proceedings (Tr. 377-380).

The ALJ held a second hearing on March 26, 2009. On September 29, 2009, the ALJ issued a decision finding that Plaintiff was not disabled between her alleged onset date of January 8, 2001, and the date her insured status expired on June 30, 2006 (Tr. 350-369).[1] Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity between her alleged onset date and her date last insured. The ALJ also found that Plaintiff suffered from lumbar degenerative disc disease status post multiple surgeries, affective disorder, generalized anxiety disorder, and a personality disorder, which were severe impairments within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Tr. 356-357 at Findings 3 and 8). The ALJ then found that Plaintiff retained the Residual Functional Capacity to perform light[2] work, but

---

[1] To receive disability insurance benefits, a claimant must be insured for benefits when she becomes disabled. 20 C.F.R. § 404.131. Based on her earnings record, Plaintiff had to show that she was disabled on or before June 30, 2006, when she last met the DIB insured status requirement.

[2] "Light" work is defined in 20 C.F.R. § 404.1567(b) as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

2

she was unable to lift more than 15 pounds or engage in repetitive bending, stooping, or climbing. She was limited to jobs that entailed only simple tasks in a low stress environment with occasional interaction with others (Tr. 358-367 at Finding 5). The ALJ determined that Plaintiff was unable to perform her past relevant work (Tr. 367 at Finding 6).

The ALJ then shifted the burden to Defendant to show the existence of other jobs in the national economy which Plaintiff could have performed. The ALJ took testimony from a Vocational Expert ("V.E.") whose testimony was based on a hypothetical that factored in the above limitations. The ALJ relied on the VE's testimony in finding that Plaintiff was capable of performing other work existing in significant numbers in the national economy (Tr. 368-369 at Finding 10), and that she was not disabled during the relevant period (Tr. 369 at Finding 11).

By notice dated October 25, 2010, the Appeals Council denied Plaintiff's request for further administrative review.

The Plaintiff filed the present action on December 23, 2010. On appeal, Plaintiff assigns error to the ALJ's alleged failures to comply with the Orders issued by the Court and subsequently by the Appeals Council remanding the case to the ALJ for a second hearing, failure to accord adequate weight to the opinion of Plaintiff's treating physician, Dr. Stephen McIntyre, and to resolve "apparent conflicts" between the V.E.'s testimony and the Dictionary of Occupational Titles ("DOT"). See Plaintiff's "Memorandum in Support ..." 13-23 (document #6). The parties' cross motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the

3

Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

4

## III. DISCUSSION OF CLAIM

The question before the ALJ was whether the Plaintiff became "disabled" as that term of art is defined for Social Security purposes at any time prior to her date last insured on June 30, 2006.[3] It is not enough for a claimant to show that she suffered from severe medical conditions or impairments which later became disabling. The subject medical conditions must have become disabling prior to the date last insured. Harrah v. Richardson, 446 F.2d 1, 2 (4th Cir. 1971) (no "manifest error in the record of the prior administrative proceedings" where Plaintiff's conditions did not become disabling until after the expiration of his insured status).

Plaintiff contends generally that the ALJ did not comply with the remand Orders of the District Court and the Appeals Council. In her brief, she argues only that the ALJ failed to comply with the Appeals Council's Order. Plaintiff contends that the ALJ's description of her mental limitations in the subsequent hearing was nearly identical to the ALJ's description of her mental limitations in the initial hearing. She asserts that was contrary to the Appeals Council's Order that "[t]o the extent that the claimant has limitations in her ability to handle work-related stress and to interact with co-workers and/or the public, the frequency of any such limitation is to be described in the decision with specificity and included in any hypothetical to the vocational expert." (Tr. 346, 380). Plaintiff does not explain why the ALJ was precluded from finding nearly identical mental limitations in the second decision. The Appeals Council's language that Plaintiff cites clearly permits the ALJ to find even less restrictive functional limitations. (Tr. 346, 380) (instructing the

---

[3]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:
    inability to engage in any substantial gainful activity by reason of any medically determinable
    physical or mental impairment which can be expected to result in death or which has lasted or can
    be expected to last for a continuous period of not less than 12 months . . . .
    Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

ALJ to describe her limitations with specificity "to the extent that claimant has limitations... ").

As the Appeals Council's Order made clear, the case was remanded because "the hypothetical residual functional capacity assessment presented to the vocational expert is less restrictive in some aspects than the residual functional capacity finding of the Administrative Law Judge" (Tr. 379). Specifically, the ALJ's initial decision found Plaintiff limited to work "in a no stress environment with no contact with the public," (Tr. 20, 379), while the ALJ's hypothetical to the first VE contained a limitation to work in a "low stress environment with only occasional[] interaction with co-workers and the public." (Tr. 328, 379). The VE's responses to hypothetical questions are only relevant when the hypotheticals are supported by substantial evidence. The ALJ relied on the VE's responses to hypothetical limitations that were less restrictive than those ultimately found. This prevented the ALJ's step five determination from being supported by substantial evidence. See Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989) (vocational expert testimony as to the existence of jobs will constitute substantial evidence in support of the ALJ's decision if it is in response to a hypothetical question based on an accurate RFC). The hypothetical posed to the VE at the second hearing mirrored the ALJ's finding as to Plaintiff's RFC. The ALJ complied with the Appeals Council's remand order, a conclusion that is supported by the Appeals Council's subsequent refusal to grant review, stating that the issues raised provided "no reason under our rules to assume jurisdiction" (Tr. 336).

Plaintiff assigns error to the ALJ's conclusion that Dr. McIntyre's opinions were not entitled to controlling weight. The Fourth Circuit has held that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178, citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

On October 18, 2007, Dr. McIntyre wrote a letter "To Whom It May Concern," and opined that Plaintiff had "a number of medical problems including sciatica despite three major back surgeries, bipolar disorder, and personality disorder," and concluded "it is my professional opinion that she is permanently disabled" (Tr. 243, 270).

On May 8, 2008, Dr. McIntyre completed a form entitled "Medical Opinion Re: Ability To Do Work Related Activities (Physical)." Dr. McIntyre found greater restrictions than the ALJ incorporated into Plaintiff's RFC, including that Plaintiff could lift and carry less than ten pounds on both an occasional basis and a frequent basis; could stand and walk for less than two hours during an eight-hour day; could sit for less than two hours during an eight-hour day; could sit for five minutes before changing position; could stand for five minutes before changing position; would need to walk around every ten minutes for five minutes each time; would need to shift at will from sitting or standing/walking; and would need to lie down at unpredictable intervals two to three times during a work shift. Dr. McIntyre also noted that Plaintiff suffered severe bipolar disease and bulimia and would be absent from work three times a month due to her impairments or treatment for them (Tr. 279-281).

On March 23, 2009, Dr. McIntyre completed a Physical Residual Functional Capacity Questionnaire which contained similar conclusions to those stated in his May 8, 2008 opinion. He also found that during a typical workday, Plaintiff's pain and medications would constantly interfere

7

with the attention and concentration needed to perform even simple tasks or low stress jobs.

On March 23, 2009 Dr. McIntyre wrote a letter "To Whom It May Concern" and stated that Plaintiff "is 100% disabled from her chronic back problems and from her emotional problems" (Tr. 462).

The ALJ noted that Dr. McIntyre's opinions regarding Plaintiff's functional limitations were inconsistent with the opinions of Plaintiff's treating orthopedist, Dr. Jeffrey Knapp (Tr. 364-365, 156, 169-170, 279-281, 463-467), and the examining psychiatrist, Dr. K. M. Ahsanuddin (Tr. 363-367). Consistency with other evidence in the record is one of the key factors in weighing opinion evidence. See 20 C.F.R. § 404.1527(d)(4). The ALJ further explained that Dr. McIntyre was neither an orthopedist nor a psychiatrist. Thus, his opinions on Plaintiff's physical limitations were less convincing than those of the treating orthopedist, Dr. Knapp, and the examining psychiatrist, Dr. Ahsanuddin (Tr. 364). See 20 C.F.R. § 404.1527(d)(5) (more weight generally given to opinion of a specialist about medical issues related to his or her area of specialty than to opinion of source who is not a specialist). Further, the ALJ noted that Dr. McIntyre's opinions regarding Plaintiff's functional limitations lacked objective medical support (Tr. 365, 279-281, 463-467). See 20 C.F.R. § 404.1527(d)(3); see also Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (a physician's checkmark opinion on a standardized multiple choice form is "not particularly informative"). The ALJ found that Dr. McIntyre provided only vague explanations for his opinions, such as "right sciatica with pain" and considered Plaintiff's use of Percocet, which she did not take until after her insured status expired (Tr. 365, 463).

As the ALJ explained, Dr. Knapp released Plaintiff to light level work with a limitation of lifting 10-15 pounds in May 2004 (Tr. 360, 169-170). The ALJ also emphasized that Dr. Knapp opined in July 2002 that Plaintiff was only restricted from work that required repetitive bending or

lifting of more than 25 pounds (Tr. 363, 156). The ALJ also relied on the opinions of the state agency medical consultant, who opined that Plaintiff could sit, stand and/or walk about six hours each in an eight-hour workday, with a limitation to only occasional stooping and crouching (Tr. 366, 93-100). In assessing Plaintiff's mental limitations, the ALJ relied on the opinion of the consultative psychiatric examiner Dr. Ahsanuddin (Tr. 188), as well as the state agency consultanting psychologist (Tr. 366). As the ALJ explained (Tr. 363), Dr. Ahsanuddin opined that Plaintiff could understand, retain, and follow instructions and sustain attention to perform simple tasks (Tr. 188). Dr. Ahsanuddin also opined that Plaintiff would have difficulty relating to others, including co-workers and supervisors, and would have difficulty tolerating the stress and pressures associated with day-to-day work activity. As the ALJ recognized, Dr. Ahsanuddin did not specify the degree or extent of those difficulties (Tr. 188, 363). The state agency consulting psychologist found that Plaintiff was capable of performing simple, routine, repetitive tasks, and appropriately interacting with co-workers and supervisors (Tr. 91). The ALJ ultimately afforded substantial weight to Dr. Ahsanuddin's opinion, limiting Plaintiff to the performance of no more than simple tasks in a low stress environment with only occasional interaction with others (Tr. 365).

Substantial evidence supports the ALJ's consideration of Dr. McIntyre's opinion. When reviewing an ALJ's decision for substantial evidence, this Court cannot "reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005).

Finally, Plaintiff asserts that the ALJ erred when he did not question the VE about any conflict between his testimony and the DOT concerning the functional requirements of jobs he testified that Plaintiff could perform. Social Security Ruling 00-4p sets forth standards for the use of vocational experts. The Ruling contains specific provisions regarding conflicts as follows:

> Occupational evidence provided by a vocational expert or VS generally should be consistent with the occupational information supplied by the *DOT*. When there is an <u>apparent unresolved conflict</u> between vocational expert or VS evidence and the *DOT*, the adjudicator must elicit a reasonable explanation for the conflict before relying on the vocational expert or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

Social Security Ruling 00-4p, *4-5 (emphasis added). The Ruling continues:

> **The Responsibility To Ask About Conflicts**
> When a vocational expert or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that vocational expert or VS evidence and information provided in the *DOT*. In these situations, the adjudicator will:
>
> Ask the vocational expert or VS if the evidence he or she has provided conflicts with information provided in the *DOT*; and
>
> If the vocational expert's or VS's evidence appears to conflict with the *DOT*, the adjudicator will obtain a reasonable explanation for the apparent conflict.
>
> **Explaining the Resolution**
> When vocational evidence provided by a vocational expert or VS is not consistent with information in the *DOT*, the adjudicator must resolve this conflict before relying on the vocational expert or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

Social Security Ruling 00-4p, *8-9.

Contrary to Plaintiff's assignment of error, the ALJ explicitly instructed the VE that if she provided an "opinion that conflicts with the Dictionary of Occupational Titles, ... you are to explain to me why your testimony might differ from that in that document." (Tr. 493). The ALJ asked the VE whether an individual capable of performing full-time work with no lifting greater than 15 pounds and no repetitive bending, stooping, crawling, or climbing, and additionally limited to

10

simple, routine tasks in a low stress environment with only occasional interaction with co-workers, supervisors, and the public would be capable of performing Plaintiff's past relevant work or other work existing in significant numbers in the national economy (Tr. 496-497). The VE testified that such an individual would not be able to perform Plaintiff's past relevant work, but could perform other work, such as a mail clerk, file clerk, office helper, photocopy machine operator, and parking lot attendant (Tr. 497-499). Under questioning from Plaintiff's representative, the VE acknowledged that there was a possibility that the job of photocopy machine operator would require moving boxes weighing more than 15 pounds (Tr. 501-502). Accordingly, the ALJ did not rely on this job in determining that Plaintiff was not disabled. (Tr. 368).

When Plaintiff's representative asked whether the parking lot attendant position would require interaction with others, the VE responded that "most parking lot attendant jobs now are in inside a, some kind of an enclosure where the person really is not communicating with the customer very much.... they're going to be in close proximity to them [customers] but they're not going to be doing a lot of conversation." (Tr. 502). The ALJ specifically addressed Plaintiff's concern by adopting the VE's explanation that any interaction between the parking lot attendant and the customer would "not really require communicating" (Tr. 368). The ALJ was entitled to rely on the VE's explanation. The VE did not believe there was a conflict, but in any event, the ALJ addressed the issue and adopted the VE's explanation. This is all SSR 00-4p requires. Plaintiff has shown no error in the ALJ's reliance on the VE's testimony that the parking lot attendant job could be performed by an individual limited to only occasional interaction with others.

Even assuming that the ALJ should not have included the other jobs identified by the VE, the ALJ properly relied on the VE's identification of the parking lot attendant position. The VE testified that there were 1,600 parking lot attendant jobs in North Carolina and 124,000 such jobs

nationally (Tr. 368). In the Fourth Circuit, 110 jobs constitutes a significant number of jobs. See Hicks v. Califano, 600 F.2d 1048, 1051 n. 2 (4th Cir. 1979); see also Hodges v. Apfel, 203 F.3d 820, 2000 WL 121251 (4th Cir. 2000) (153 jobs constitutes a significant number); Hyatt v. Apfel, 153 F.3d 720, 1998 WL 480722 at *3 (4th Cir. Aug. 6, 1998) (rejecting argument that 650 jobs statewide were not a significant number because, "We previously have found [in *Hicks*] that as few as 110 jobs constitute a significant number"). Because substantial evidence supports the ALJ's reliance on the VE's testimony that an individual with Plaintiff's limitations was capable of performing the job of parking lot attendant, substantial evidence supports the ALJ's step five determination.

Although the medical records establish that the Plaintiff experienced pain and mental and emotional difficulties to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles, 29 F.3d at 923, citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the record and the hearing testimony, and his ultimate determination that the Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #5) be **DENIED;** that Defendant's

"Motion for Summary Judgment" (document #7) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

V. **NOTICE OF APPEAL RIGHTS**

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Richard L. Voorhees.

**SO RECOMMENDED AND ORDERED**.

Signed: July 12, 2011

David S. Cayer
United States Magistrate Judge

13